1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                              CENTRAL DISTRICT OF CALIFORNIA

10                                    WESTERN DIVISION

11    ELIA GARCIA,
                                                )
12                  Plaintiff,                  )      Case  No. CV 10 - 03827 (AJW)
                                                )
13           v.                                 )      MEMORANDUM OF DECISION
                                                )
14    MICHAEL J. ASTRUE,                         )
      Commissioner of the Social                )
15    Security Administration,                   )
                                                )
16                  Defendant.                   )
      _____)

17

18          Plaintiff filed this action seeking reversal of the decision of the defendant, the Commissioner of the

19    Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance

20    benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each

21    disputed issue.

22                                    **Administrative Proceedings**

23          Plaintiff alleges that she became disabled on September 30, 2000 due to type II diabetes mellitus

24    with peripheral neuropathy, lumbar degenerative disc disease, and gastroesophageal reflux disease

25    ("GERD"). [JS 2].  Plaintiff filed her application for disability insurance benefits on February 21, 2008.[1]

26

27          [1]     Plaintiff also filed an application for supplemental security income ("SSI") benefits on that

28    date; however, only the Commissioner's decision denying plaintiff's application for disability
      insurance benefits is before the Court in this action. Plaintiff's application for SSI benefits was

1  That application was denied initially and upon reconsideration. [JS 2; Administrative Record ("AR") 112].

2  Plaintiff requested an administrative hearing, which was conducted before an administrative law judge (the

3  "ALJ") on October 21, 2009.  [JS 2; AR 25-39].

4  On November 12, 2009, the ALJ issued a written decision denying plaintiff's application for

5  disability insurance benefits.  The ALJ concluded that plaintiff was not disabled from September 30, 2000,

6  her alleged date of onset, through December 31, 2005, her date last insured, because plaintiff had the

7  residual functional capacity ("RFC") to perform jobs that existed in significant numbers in the national

8  economy. [JS 2; AR 6-24].  The Appeals Council denied plaintiff's request for review of that decision. [AR

9  6-8].

10  **Standard of Review**

11  The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial

12  evidence or is based on legal error. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir.

13  2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  "Substantial evidence" means "more than

14  a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir.

15  2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

16  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is

17  required to review the record as a whole and to consider evidence detracting from the decision as well as

18  evidence supporting the decision.  Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006);

19  Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than

20  one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

21  Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

22  **Statement of Disputed Issues**

23  The disputed issues are: (1) whether the ALJ properly considered the opinion of consultative

24  examining psychiatrist Suzanne Ashman, M.D.; and (2) whether the ALJ properly considered the opinion

25  of state agency physician Calmeze Dudley, M.D.

26

27  denied on the grounds of excess resources, and that decision was not before the Administrative Law

28  Judge during the administrative hearing on October 1, 2009. [See Administrative Record ("AR") 12, 27, 84].

1  ///

2  **Discussion**

3  **Consultative examining psychiatrist**

4  Plaintiff contends that the ALJ erred in failing to properly consider the opinion of the

5  Commissioner's examining psychiatrist, Dr. Ashman.  [See JS 3-9].

6  Plaintiff said that she stopped working in September 2000 because of high cholesterol, uncontrolled

7  diabetes, and because she became nervous.  [JS 5; AR 29, 127].  Plaintiff's date last insured was December

8  31, 2005.  [JS 5; AR 12].  Plaintiff submitted some medical records dated prior to her date last insured, but

9  the majority of the medical records are from 2007 and 2008.  [JS 5; see AR 160-239].

10  The ALJ based his decision on the testimony of the medical expert, Dr. Lowell L. Sparks, Jr., and

11  the psychological expert, Dr. David B. Peterson.  [AR 15].  Dr. Sparks testified that during the period

12  between September 30, 2000 and December 31, 2005, plaintiff had severe diabetes under fair to poor

13  control, diabetic peripheral neuropathy, lumbar degenerative disc disease, and GERD with gastritis.  [AR

14  15, 32].  Dr. Sparks also testified that plaintiff's chronic sinusitis, hypertension, and glaucoma were

15  controlled, and that there was no evidence of migraine headaches during the relevant period.  [AR 15, 32-

16  33].  Additionally, Dr. Sparks said that he did not see medical evidence of impairments that would cause

17  plaintiff's reported symptoms of poor vision, chronic diarrhea, and urination complaints.  [AR 15, 33].

18  On examination by plaintiff's attorney, Dr. Sparks acknowledged that plaintiff told the consultative

19  psychiatrist that she suffers from a condition known as Fragile X.  Dr. Sparks described Fragile X as "a

20  chromosomal anomaly which affects the X chromosome, which is one of the two sex chromosomes.  In

21  females . . . the [effects] are mostly mental and cognitive."  [AR 33].  Plaintiff's counsel asked, "[s]o there

22  would be an organic basis for that, then?"  [AR 33].  Dr. Sparks answered affirmatively.  [AR 33].

23  Dr. Peterson noted that the record did not contain treating records from the relevant period, and that

24  the records closest to that period indicated that plaintiff had depression that was well-controlled with

25  medication in 2006. [AR 15, 34].  Dr. Peterson testified that "[w]ith respect to the Fragile X discussion and

26  the IQ testing from 2008, there is a diagnosis of borderline intellectual functioning that I believe would have

27  been relevant back then.  There's no reason to believe not." [AR 34-35]. Dr. Peterson testified that he was

28  "unable to say there's a meeting or equalling of a record" based on the evidence in the record, and that based

on medical evidence post-dating plaintiff's date last insured, she would have been able to understand, remember, and carry out simple, but not complex, instructions during the relevant period. [AR 15, 35].

In addition to the testimony of Dr. Sparks and Dr. Peterson, the record contains the report of a consultative psychiatric evaluation performed by Dr. Ashman on April 12, 2008 and a psychological evaluation with testing performed in June 2008 by Scott Kopoian Ph.D. [AR 248-254, 256-262]. Plaintiff told Dr. Ashman that she had "Fragile X,"[2] which, as Dr. Ashman understood it, "is a poorly understood genetic condition that can lead to many different things: problems with I.Q. most notably and also problems with anxiety, Attention Deficit Hyperactivity Disorder, and mood problems." [AR 248-249]. Plaintiff also said that she took 100 milligrams of Zoloft daily for depression. Citing plaintiff's symptoms and history, Dr. Ashman noted that plaintiff presented "with what appears to be some of the intellectual problems that result from Fragile X disorder." [AR 249]. Dr. Ashman's diagnostic impression was cognitive disorder, not otherwise specified ("NOS"); depressive disorder, NOS; anxiety disorder, NOS; rule out depression or anxiety condition "secondary to general medical condition being Fragile X disorder." [AR 252]. In her functional assessment, Dr. Ashman concluded that plaintiff

> needs to be evaluated for Borderline Intellectual Functioning before she can be fully assessed for SSI. She appears to have some level of borderline intellectual functioning. I will base [my] functional assessment, however, on any mood related problems. Any neuropsychological problems or intellectual or cognitive problems would need to be further assessed by a psychologist.

[AR 252].

Based on plaintiff's mood-related problems only, Dr. Ashman concluded that plaintiff was able to perform simple and repetitive tasks and was mildly limited in her ability to perform the following work-related functions: maintain regular attendance, perform work activities on a consistent basis or without special supervision, complete a normal work day or work week without interruptions resulting from her psychiatric condition, accept instructions from supervisors, interact with coworkers and with the public, and

_____

[2]   Given the relatively obscure nature of a Fragile X diagnosis, it seems likely that plaintiff received a medical diagnosis of that condition by a doctor prior to the evaluation by Dr. Ashman. The record, however, does not contain evidence of a Fragile X diagnosis.

deal with usual stress. [JS 3; AR 252].   Dr. Ashman noted that although plaintiff reported that she stopped working for medical reasons not related to psychiatric or intellectual problems, Fragile X could be a factor in an age-related decrease in the ability to work. [AR 253].

The ALJ found that plaintiff  had the RFC to perform light work, and that plaintiff was limited to the performance of simple, repetitive tasks. [AR 17].  In finding that there was no evidence of greater than mild functional limitations for the period between September 30, 2000 through December 31, 2005, the ALJ said that he assigned the most weight to the testimony of the medical experts, Dr. Sparks and Dr. Peterson. The ALJ relied on Dr. Peterson's testimony that plaintiff's depression was currently controlled, and that due diagnosis of borderline intellectual functioning, plaintiff would no longer be able to perform skilled work, but could perform simple, repetitive tasks. [AR 19].

The ALJ did not mention, or give reasons for rejecting, Dr. Ashman's opinion. [See AR 12-20].  If contradicted by the opinion of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record.  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan v. Halter, 242 F.3d 1144, 1148-1149 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).  The ALJ's  silent disregard of Dr. Ashman's examining source opinion was legal error.

Defendant argues that "[a] retrospective medical diagnosis that is not supported by objective medical signs and findings during the relevant period does not serve as substantial evidence," and therefore that Dr. Ashman's report is not material to the issue of plaintiff's disability during the relevant period. [JS 6 (citing Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995)).  ].

Standing alone, the retrospective nature of Dr. Ashman's opinion does not provide grounds for rejecting it.  See Morgan, 169 F.3d at 601-602.  The Ninth Circuit "has specifically held that evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition." Lester, 81 F.3d at 832. Dr. Ashman's report explained that plaintiff said that she had Fragile X, a genetic condition that would have been present before, during, and after the relevant insured period. [AR 248-249].  Dr. Ashman explained that Fragile X "can come with a host of anxiety, mood, attention deficit and intellectual problems," and that plaintiff's history, subjective symptoms, and presentation all appeared consistent in many respects with the presence of Fragile X. [AR 248-249, 253].

1    Johnson, the case relied on by defendant, is distinguishable.  In that case, the ALJ gave "specific

2  reasons" supported by the record for rejecting a treating physician's retrospective disability opinion.  The

3  ALJ in this case gave no reasons for rejecting Dr. Ashman's opinion.  The ALJ in Johnson permissibly

4  rejected the retrospective disability opinion because it was "not substantiated by medical evidence relevant

5  to the period in question," contradicted the treating physician's own contemporaneous findings during the

6  relevant period, and was made after two intervening car accidents aggravated the claimant's condition.

7  Johnson, 60 F.3d at 1432-1433.  In this case, there is no evidence that Dr. Ashman's assessment reflected

8  exacerbating events or conditions that occurred after plaintiff's date last insured.  Dr. Ashman also did not

9  make inconsistent prior findings.  Although the record contains little medical evidence from the period

10  before plaintiff's date last insured, Dr. Ashman's observations about Fragile X are consistent with Dr.

11  Sparks's testimony that Fragile X could be an organic source of mental and cognitive problems, and with

12  Dr. Peterson's testimony that there was no reason to believe that plaintiff's diagnosis of borderline

13  intellectual functioning would not have been present prior to her date last insured. Dr. Ashman emphasized

14  that in order to be "fully assessed for SSI," plaintiff needed "neuropsychological testing" with I.Q. testing

15  to evaluate her intellectual functioning, which is "difficult to separate" from her work-related functioning.

16  [AR 252].

17    Dr. Kopoian subsequently conducted a psychological evaluation and administered a battery of tests,

18  including I.Q. testing. [AR 256-262].  The ALJ did not discuss Dr. Kopoian's findings or conclusions. Dr.

19  Peterson alluded to plaintiff's I.Q. test results when he testified that "there is a diagnosis of borderline

20  intellectual functioning" in June 2008.  Dr. Kopoian's report, however, is both more detailed and more

21  nuanced than Dr. Peterson's testimony suggests, both with respect to plaintiff's diagnoses and her functional

22  abilities.  For example, Dr. Kopoian diagnosed anxiety disorder NOS with depressive features and learning

23  disorder NOS, in addition to borderline intellectual functioning.  During the hearing, Dr. Peterson testified

24  that plaintiff may have had depression before 2006, when there was documented treatment for that

25  condition, and that there was no reason to believe that plaintiff's borderline intellectual functioning was not

26  present during the relevant period. [AR 33]. By analogy, any learning disorder also was likely present before

27  and during the relevant period. Dr. Kopoian opined that plaintiff's mental impairments limited her to

28  "simple 2-3 sequence tasks for 6-8 hours at an adequate pace without continuous supervision" in "simple,

1   predictable, low stress settings with adequate support and monitoring." [AR 261].  The ALJ did not include

2   those specific impairments in his RFC finding.  Nothing in Dr. Peterson's testimony or in the ALJ's decision

3   indicates that the ALJ adequately considered Dr. Kopoian's diagnoses and functional assessment and

4   whether, or to what extent, those impairments were present prior to plaintiff's date last insured.[3]

5       Defendant argues that any error on the ALJ's part was harmless.  The Ninth Circuit has held that an

6   ALJ's failure to properly discuss competent lay testimony favorable to the claimant is not harmless error

7   unless a reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the

8   testimony, could have reached a different disability determination."  Stout, 454 F.3d at 1054.  The ALJ

9   disregarded competent medical evidence. This Court cannot confidently conclude that no reasonable ALJ

10  could have found plaintiff disabled for all or part of her alleged period of disability when fully crediting the

11  examining and nonexamining source opinions and assessing their implications for plaintiff's RFC during

12  the relevant period.[4]  Therefore, the ALJ's error was not harmless.

13  **Remand**

14      The choice whether to reverse and remand for further administrative proceedings, or to reverse and

15  simply award benefits, is within the discretion of the court.  See Harman v. Apfel, 211 F.3d 1172, 1178 (9th

16

---

17  [3]   The ALJ found that plaintiff's diagnosis of borderline intellectual functioning during the
18  relevant period "is significantly undermined by the claimant's language barriers and skilled past
    relevant work history." [AR 17].  However, the record does not support the conclusion that
19  plaintiff's diagnosis of borderline intellectual functioning was attributable to deficits in her English
    language skills, rather than an organic source such as Fragile X.  The ALJ himself asked the
20  vocational expert to assume that plaintiff  speaks and understands English well enough to earn a
    GED, work in a bank for 20 years, and testify during the hearing without the assistance of an
21  interpreter. [AR 36-37].  Dr. Kopoian found that there was "no evidence of any receptive language
    problems" affecting her test performance. [AR 158].  Plaintiff's past relevant work is a factor that
22  the ALJ may consider in assessing the impact of plaintiff's intellectual functioning on her ability to
    work during the relevant period, but in that event the ALJ also should consider plaintiff's testimony
23  about mental functional difficulties she experienced on the job, and Dr. Ashman's suggestion that
    age might play into functional problems associated with Fragile X.
24

25  [4]   The disposition of this case makes it unnecessary to address plaintiff's contention that the
26  ALJ did not properly consider the opinion of the nonexamining state agency consultant, Dr. Dudley.
    On remand, the ALJ should consider and discuss all of the medical source opinions in the record.
27  Additionally, the ALJ should attempt to create a complete record by obtaining any additional
    medical evidence not already contained in the record, including, if available, any reports related to
28  plaintiff's diagnosis of Fragile X.

1  Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of

2  benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038

3  (2000).  The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand

4  to the agency for additional investigation or explanation." Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir.

5  2004) (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)).   A district court, however,

6  　　　　should credit evidence that was rejected during the administrative process and remand for

7  　　　　an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for

8  　　　　rejecting the evidence; (2) there are no outstanding issues that must be resolved before a

9  　　　　determination of disability can be made; and (3) it is clear from the record that the ALJ

10  　　　　would be required to find the claimant disabled were such evidence credited.

11  Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178). The Harman test

12  "does not obscure the more general rule that the decision whether to remand for further proceedings turns

13  upon the likely utility of such proceedings." Harman, 211 F.3d at 1179; see Benecke, 379 F.3d at 593

14  (noting that a remand for further administrative proceedings is appropriate "if enhancement of the record

15  would be useful").

16  　　　　In this case, a remand for further proceedings is the appropriate remedy because outstanding issues

17  remain to be resolved, and it is not clear from the record that the ALJ would be required to find plaintiff

18  disabled if he properly weighed the evidence of record.  On remand, the ALJ should conduct a new hearing

19  and issue a new hearing decision with appropriate findings based on all of the medical evidence in the

20  record.

21  **Conclusion**

22  　　　　For the reasons stated above, the Commissioner's decision is not supported by substantial evidence

23  and is not free of legal error.  Accordingly, the Commissioner's decision is reversed and the case is

24  remanded for further proceedings consistent with this memorandum of decision.

25  **IT IS SO ORDERED.**

26  September 28, 2011

27  　　　　　　　　　　　　　　　　　　　_____

28  　　　　　　　　　　　　　　　　　　　ANDREW J. WISTRICH
　　　　　　　　　　　　　　　　　　　United States Magistrate Judge