UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ELIA GARCIA, ) | |
| Plaintiff, ) | Case No. CV 10 - 03827 (AJW) |
| ) | |
| v. ) | MEMORANDUM OF DECISION |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

Plaintiff filed this action seeking reversal of the decision of the defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff alleges that she became disabled on September 30, 2000 due to type II diabetes mellitus with peripheral neuropathy, lumbar degenerative disc disease, and gastroesophageal reflux disease ("GERD"). [JS 2]. Plaintiff filed her application for disability insurance benefits on February 21, 2008.[1]

---

[1] Plaintiff also filed an application for supplemental security income ("SSI") benefits on that date; however, only the Commissioner's decision denying plaintiff's application for disability insurance benefits is before the Court in this action. Plaintiff's application for SSI benefits was

That application was denied initially and upon reconsideration. [JS 2; Administrative Record ("AR") 112]. Plaintiff requested an administrative hearing, which was conducted before an administrative law judge (the "ALJ") on October 21, 2009. [JS 2; AR 25-39].

On November 12, 2009, the ALJ issued a written decision denying plaintiff's application for disability insurance benefits. The ALJ concluded that plaintiff was not disabled from September 30, 2000, her alleged date of onset, through December 31, 2005, her date last insured, because plaintiff had the residual functional capacity ("RFC") to perform jobs that existed in significant numbers in the national economy. [JS 2; AR 6-24]. The Appeals Council denied plaintiff's request for review of that decision. [AR 6-8].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Statement of Disputed Issues**

The disputed issues are: (1) whether the ALJ properly considered the opinion of consultative examining psychiatrist Suzanne Ashman, M.D.; and (2) whether the ALJ properly considered the opinion of state agency physician Calmeze Dudley, M.D.

---

denied on the grounds of excess resources, and that decision was not before the Administrative Law Judge during the administrative hearing on October 1, 2009. [See Administrative Record ("AR") 12, 27, 84].

///

## Discussion

**Consultative examining psychiatrist**

Plaintiff contends that the ALJ erred in failing to properly consider the opinion of the Commissioner's examining psychiatrist, Dr. Ashman. [See JS 3-9].

Plaintiff said that she stopped working in September 2000 because of high cholesterol, uncontrolled diabetes, and because she became nervous. [JS 5; AR 29, 127]. Plaintiff's date last insured was December 31, 2005. [JS 5; AR 12]. Plaintiff submitted some medical records dated prior to her date last insured, but the majority of the medical records are from 2007 and 2008. [JS 5; see AR 160-239].

The ALJ based his decision on the testimony of the medical expert, Dr. Lowell L. Sparks, Jr., and the psychological expert, Dr. David B. Peterson. [AR 15]. Dr. Sparks testified that during the period between September 30, 2000 and December 31, 2005, plaintiff had severe diabetes under fair to poor control, diabetic peripheral neuropathy, lumbar degenerative disc disease, and GERD with gastritis. [AR 15, 32]. Dr. Sparks also testified that plaintiff's chronic sinusitis, hypertension, and glaucoma were controlled, and that there was no evidence of migraine headaches during the relevant period. [AR 15, 32-33]. Additionally, Dr. Sparks said that he did not see medical evidence of impairments that would cause plaintiff's reported symptoms of poor vision, chronic diarrhea, and urination complaints. [AR 15, 33].

On examination by plaintiff's attorney, Dr. Sparks acknowledged that plaintiff told the consultative psychiatrist that she suffers from a condition known as Fragile X. Dr. Sparks described Fragile X as "a chromosomal anomaly which affects the X chromosome, which is one of the two sex chromosomes. In females . . . the [effects] are mostly mental and cognitive." [AR 33]. Plaintiff's counsel asked, "[s]o there would be an organic basis for that, then?" [AR 33]. Dr. Sparks answered affirmatively. [AR 33].

Dr. Peterson noted that the record did not contain treating records from the relevant period, and that the records closest to that period indicated that plaintiff had depression that was well-controlled with medication in 2006. [AR 15, 34]. Dr. Peterson testified that "[w]ith respect to the Fragile X discussion and the IQ testing from 2008, there is a diagnosis of borderline intellectual functioning that I believe would have been relevant back then. There's no reason to believe not." [AR 34-35]. Dr. Peterson testified that he was "unable to say there's a meeting or equalling of a record" based on the evidence in the record, and that based

3

on medical evidence post-dating plaintiff's date last insured, she would have been able to understand, remember, and carry out simple, but not complex, instructions during the relevant period. [AR 15, 35].

In addition to the testimony of Dr. Sparks and Dr. Peterson, the record contains the report of a consultative psychiatric evaluation performed by Dr. Ashman on April 12, 2008 and a psychological evaluation with testing performed in June 2008 by Scott Kopoian Ph.D. [AR 248-254, 256-262]. Plaintiff told Dr. Ashman that she had "Fragile X,"[2] which, as Dr. Ashman understood it, "is a poorly understood genetic condition that can lead to many different things: problems with I.Q. most notably and also problems with anxiety, Attention Deficit Hyperactivity Disorder, and mood problems." [AR 248-249]. Plaintiff also said that she took 100 milligrams of Zoloft daily for depression. Citing plaintiff's symptoms and history, Dr. Ashman noted that plaintiff presented "with what appears to be some of the intellectual problems that result from Fragile X disorder." [AR 249]. Dr. Ashman's diagnostic impression was cognitive disorder, not otherwise specified ("NOS"); depressive disorder, NOS; anxiety disorder, NOS; rule out depression or anxiety condition "secondary to general medical condition being Fragile X disorder." [AR 252]. In her functional assessment, Dr. Ashman concluded that plaintiff

> needs to be evaluated for Borderline Intellectual Functioning before she can be fully assessed for SSI. She appears to have some level of borderline intellectual functioning. I will base [my] functional assessment, however, on any mood related problems. Any neuropsychological problems or intellectual or cognitive problems would need to be further assessed by a psychologist.

[AR 252].

Based on plaintiff's mood-related problems only, Dr. Ashman concluded that plaintiff was able to perform simple and repetitive tasks and was mildly limited in her ability to perform the following work-related functions: maintain regular attendance, perform work activities on a consistent basis or without special supervision, complete a normal work day or work week without interruptions resulting from her psychiatric condition, accept instructions from supervisors, interact with coworkers and with the public, and

---

[2] Given the relatively obscure nature of a Fragile X diagnosis, it seems likely that plaintiff received a medical diagnosis of that condition by a doctor prior to the evaluation by Dr. Ashman. The record, however, does not contain evidence of a Fragile X diagnosis.

4

deal with usual stress. [JS 3; AR 252]. Dr. Ashman noted that although plaintiff reported that she stopped working for medical reasons not related to psychiatric or intellectual problems, Fragile X could be a factor in an age-related decrease in the ability to work. [AR 253].

The ALJ found that plaintiff had the RFC to perform light work, and that plaintiff was limited to the performance of simple, repetitive tasks. [AR 17]. In finding that there was no evidence of greater than mild functional limitations for the period between September 30, 2000 through December 31, 2005, the ALJ said that he assigned the most weight to the testimony of the medical experts, Dr. Sparks and Dr. Peterson. The ALJ relied on Dr. Peterson's testimony that plaintiff's depression was currently controlled, and that due diagnosis of borderline intellectual functioning, plaintiff would no longer be able to perform skilled work, but could perform simple, repetitive tasks. [AR 19].

The ALJ did not mention, or give reasons for rejecting, Dr. Ashman's opinion. [See AR 12-20]. If contradicted by the opinion of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan v. Halter, 242 F.3d 1144, 1148-1149 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). The ALJ's silent disregard of Dr. Ashman's examining source opinion was legal error.

Defendant argues that "[a] retrospective medical diagnosis that is not supported by objective medical signs and findings during the relevant period does not serve as substantial evidence," and therefore that Dr. Ashman's report is not material to the issue of plaintiff's disability during the relevant period. [JS 6 (citing Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995)). ].

Standing alone, the retrospective nature of Dr. Ashman's opinion does not provide grounds for rejecting it. See Morgan, 169 F.3d at 601-602. The Ninth Circuit "has specifically held that evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition." Lester, 81 F.3d at 832. Dr. Ashman's report explained that plaintiff said that she had Fragile X, a genetic condition that would have been present before, during, and after the relevant insured period. [AR 248-249]. Dr. Ashman explained that Fragile X "can come with a host of anxiety, mood, attention deficit and intellectual problems," and that plaintiff's history, subjective symptoms, and presentation all appeared consistent in many respects with the presence of Fragile X. [AR 248-249, 253].

1 Johnson, the case relied on by defendant, is distinguishable. In that case, the ALJ gave "specific
2 reasons" supported by the record for rejecting a treating physician's retrospective disability opinion. The
3 ALJ in this case gave no reasons for rejecting Dr. Ashman's opinion. The ALJ in Johnson permissibly
4 rejected the retrospective disability opinion because it was "not substantiated by medical evidence relevant
5 to the period in question," contradicted the treating physician's own contemporaneous findings during the
6 relevant period, and was made after two intervening car accidents aggravated the claimant's condition.
7 Johnson, 60 F.3d at 1432-1433. In this case, there is no evidence that Dr. Ashman's assessment reflected
8 exacerbating events or conditions that occurred after plaintiff's date last insured. Dr. Ashman also did not
9 make inconsistent prior findings. Although the record contains little medical evidence from the period
10 before plaintiff's date last insured, Dr. Ashman's observations about Fragile X are consistent with Dr.
11 Sparks's testimony that Fragile X could be an organic source of mental and cognitive problems, and with
12 Dr. Peterson's testimony that there was no reason to believe that plaintiff's diagnosis of borderline
13 intellectual functioning would not have been present prior to her date last insured. Dr. Ashman emphasized
14 that in order to be "fully assessed for SSI," plaintiff needed "neuropsychological testing" with I.Q. testing
15 to evaluate her intellectual functioning, which is "difficult to separate" from her work-related functioning.
16 [AR 252].

17 Dr. Kopoian subsequently conducted a psychological evaluation and administered a battery of tests,
18 including I.Q. testing. [AR 256-262]. The ALJ did not discuss Dr. Kopoian's findings or conclusions. Dr.
19 Peterson alluded to plaintiff's I.Q. test results when he testified that "there is a diagnosis of borderline
20 intellectual functioning" in June 2008. Dr. Kopoian's report, however, is both more detailed and more
21 nuanced than Dr. Peterson's testimony suggests, both with respect to plaintiff's diagnoses and her functional
22 abilities. For example, Dr. Kopoian diagnosed anxiety disorder NOS with depressive features and learning
23 disorder NOS, in addition to borderline intellectual functioning. During the hearing, Dr. Peterson testified
24 that plaintiff may have had depression before 2006, when there was documented treatment for that
25 condition, and that there was no reason to believe that plaintiff's borderline intellectual functioning was not
26 present during the relevant period. [AR 33]. By analogy, any learning disorder also was likely present before
27 and during the relevant period. Dr. Kopoian opined that plaintiff's mental impairments limited her to
28 "simple 2-3 sequence tasks for 6-8 hours at an adequate pace without continuous supervision" in "simple,

6

1 predictable, low stress settings with adequate support and monitoring." [AR 261]. The ALJ did not include
2 those specific impairments in his RFC finding. Nothing in Dr. Peterson's testimony or in the ALJ's decision
3 indicates that the ALJ adequately considered Dr. Kopoian's diagnoses and functional assessment and
4 whether, or to what extent, those impairments were present prior to plaintiff's date last insured.[3]

Defendant argues that any error on the ALJ's part was harmless. The Ninth Circuit has held that an ALJ's failure to properly discuss competent lay testimony favorable to the claimant is not harmless error unless a reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, 454 F.3d at 1054. The ALJ disregarded competent medical evidence. This Court cannot confidently conclude that no reasonable ALJ could have found plaintiff disabled for all or part of her alleged period of disability when fully crediting the examining and nonexamining source opinions and assessing their implications for plaintiff's RFC during the relevant period.[4] Therefore, the ALJ's error was not harmless.

**Remand**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th

---

[3] The ALJ found that plaintiff's diagnosis of borderline intellectual functioning during the relevant period "is significantly undermined by the claimant's language barriers and skilled past relevant work history." [AR 17]. However, the record does not support the conclusion that plaintiff's diagnosis of borderline intellectual functioning was attributable to deficits in her English language skills, rather than an organic source such as Fragile X. The ALJ himself asked the vocational expert to assume that plaintiff speaks and understands English well enough to earn a GED, work in a bank for 20 years, and testify during the hearing without the assistance of an interpreter. [AR 36-37]. Dr. Kopoian found that there was "no evidence of any receptive language problems" affecting her test performance. [AR 158]. Plaintiff's past relevant work is a factor that the ALJ may consider in assessing the impact of plaintiff's intellectual functioning on her ability to work during the relevant period, but in that event the ALJ also should consider plaintiff's testimony about mental functional difficulties she experienced on the job, and Dr. Ashman's suggestion that age might play into functional problems associated with Fragile X.

[4] The disposition of this case makes it unnecessary to address plaintiff's contention that the ALJ did not properly consider the opinion of the nonexamining state agency consultant, Dr. Dudley. On remand, the ALJ should consider and discuss all of the medical source opinions in the record. Additionally, the ALJ should attempt to create a complete record by obtaining any additional medical evidence not already contained in the record, including, if available, any reports related to plaintiff's diagnosis of Fragile X.

Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)). A district court, however,

> should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178). The Harman test "does not obscure the more general rule that the decision whether to remand for further proceedings turns upon the likely utility of such proceedings." Harman, 211 F.3d at 1179; see Benecke, 379 F.3d at 593 (noting that a remand for further administrative proceedings is appropriate "if enhancement of the record would be useful").

In this case, a remand for further proceedings is the appropriate remedy because outstanding issues remain to be resolved, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if he properly weighed the evidence of record. On remand, the ALJ should conduct a new hearing and issue a new hearing decision with appropriate findings based on all of the medical evidence in the record.

**Conclusion**

For the reasons stated above, the Commissioner's decision is not supported by substantial evidence and is not free of legal error. Accordingly, the Commissioner's decision is reversed and the case is remanded for further proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

September 28, 2011

_____
ANDREW J. WISTRICH
United States Magistrate Judge